**LINZEY, Plaintiff-Appellee, v. FABIAN, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3227.   Decided 1948

Edward L. Williams, Youngstown, for plaintiff-appellee.
Stephens & Young, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, J.

Defendant appeals on questions of law from a judgment of the court of common pleas entered upon a jury verdict returned for plaintiff in her action filed against him therein to recover damages for personal injuries sustained allegedly as the result of defendant's negligence in operating his automobile, in an easterly direction over and along Boardman Street, into collision with her automobile, which she was operating in a southerly direction over and along Walnut Street within the corporate limits and in the closely built up section of the City of Youngstown, Ohio, about 6:30 o'clock on the morning of November 24, 1946.

In her amended petition plaintiff charged defendant with carelessly, negligently and unlawfully operating his automobile at forty to fifty miles an hour without keeping a lookout for others in the lawful use of Boardman and Walnut Streets; without having it under such control as to be able to slow it down or stop it within his assured clear distance ahead or when he saw, or in the exercise of ordinary care on his part should have seen, plaintiff stop her automobile before entering Boardman Street; and thereafter operating it in a southerly direction on Walnut Street into the intersection of Boardman Street therewith without warning her of his intention of so operating his automobile; and without equipping it with lights showing discernible objects the required statutory distance ahead.

In his answer defendant admitted that Walnut and Boardman Streets are two duly dedicated improved public highways which intersect at right angles within the corporate limits of the City of Youngstown, Ohio; admitted that he and plaintiff were operating their respective automobiles over and along Walnut and Boardman Streets in the directions alleged by plaintiff, at which points those streets are twenty and twenty-six feet wide respectively from curb to curb; admitted the plaintiff was injured, but denied that such injuries were caused or brought about by or through any "fault, neglect or misconduct" on his part; and affirmatively alleged that plaintiff sustained her injuries "by reason of her own negligence, inattention and unlawful conduct".

By cross-petition defendant charged plaintiff with carelessly, negligently and unlawfully operating her automobile "at a rate of speed greater than was reasonable and proper" over and along Walnut Street into the intersection of Boardman Street therewith "having regard for the said condition

and location of said highways"; without having her automobile under control or keeping "a proper lookout for other lawful users of the highway"; without giving him "any warning of her rapid approach to said intersection"; and without yielding the right of way thereat to him, as a result of all of which he suffered personal injuries and property damage, for which he sought damages from her.

Generally both parties introduced evidence to support the allegations of their respective pleadings, which it is not necessary to state too fully to understand the questions presented by defendant's assignments of error.

There is evidence that both parties were to some extent familiar with Boardman and Walnut Streets and their intersection each with the other within the corporate limits of the city of Youngstown, over and along which streets defendant said "except for those darting taxicabs" traffic was light usually at the time of day when his car and that of the plaintiff collided.

Defendant, called for cross-examination as a witness in plaintiff's case, testified that the brakes on his car were in excellent condition on the morning in question; that Walnut and Boardman Streets were "dry" and "there was not'" any traffic ahead of him or coming toward him; that it was not yet daylight and that the headlights on his automobile were lighted which showed ahead the "normal distance", which he "couldn't exactly say you could say was beyond" the length of the courtroom in which the case was tried, which the trial judge said was fifty-two feet, and while he could see objects in the distance he could not state the actual distance they were away from him; that as he approached the intersection of Walnut Street he was driving about five or ten miles per hour, and under the then existing conditions he could have stopped his automobile in twenty feet; that he did not see plaintiff's car until his car collided with it, but saw it "just at the very time I struck her (plaintiff's) right front fender" with the left front fender of his automobile; that "the entire front of the (his) car was caved in"; that he didn't slow down nor blow his horn before the accident.

Plaintiff testified on direct examination that as she approached the intersection of Walnut Street with Boardman Street she "saw two headlights coming down the street" (Boardman Street), "to the 'right of me approximately 150 feet" distant; that "I blew the horn and started across the road", and "I had only gotten about half way across the street", Boardman Street, when "it (her automobile) was knocked into the Henderson Building" (situated on the south-

easterly angle created by the intersection of Boardman and Walnut Streets); that she was hospitalized in bed for twenty-two days during which time "I was put in a traction", a harness like apparatus fitted over the jaws, head and neck, which she was compelled to wear until "the 17th day of December", and thereafter wore a specially fitted brace to cure a "fracture of the odontoid process of the second cervical vertebrae and a fracture of the ring of the second cervical vertebrae", "which she never had off until March"; that she was unconscious and in shock, and that since receiving such injuries she has suffered great physical pain and mental anguish, and a severe, lasting and permanent shock to her entire nervous system, and at the time of trial suffered from arthritis in the regions of the head and neck, the pain of which her doctor testified can be relieved only by putting her in collar; that she was then earning $165.00 a month and her board, and was unable to work or earn money from July 31 to November 3; that "for three months she couldn't get her teeth together", and had to be fed for a long period of time; that she suffered "a fracture of the maxilla, upper jaw", numerous cuts, bruises and other injuries, and for a long period of time was unable to walk; that she was called upon to expend $245.16 for hospital, $10.00 for x-ray expenses, $51.50 for a brace, $16.00 for dental care, $5.00 for ambulance service, $240.00 for physicians services, and $25.00 for medicines, and that it would cost "five or six hundred dollars" to repair her automobile.

Upon cross-examination plaintiff testified with reference to the place where the collision happened that "I had possibly been over it once or twice before, but no more than that"; that she "would say" she was "unfamiliar with the place of the accident"; that she brought her car to a full stop before entering Boardman Street, at which point she could see approximately 300 feet along Boardman Street.

Called for direct examination in his own case defendant testified that he received injuries to his right knee, which he alleged but did not prove were worth $150.00; that his automobile was damaged to the extent of $350.00; that he did not see the car (plaintiff's car) before the accident and only saw "headlights" "fifteen or twenty feet" away; that he thought plaintiff was going to stop her automobile before crossing Boardman Street, "and it seemed to increase the speed instead and the next thing I knew I hit her", when her car was traveling "I would estimate at twenty-five or thirty miles an hour"; that "I did not hear a horn" sounded on plaintiff's automobile; and verified plaintiff's testimony with reference to plaintiff's car coming in contact with the "Henderson Building".

Upon cross-examination had in his own case defendant testified that as he approached Walnut Street on the morning of the collision he did not brake nor slow down his automobile, and gave no warning of its approach; and in response to the question "there is not one single thing you did before this crash happened except to run into this car", answered "that is right", that at that time "it is my best judgment I was going fifteen miles an hour".

Defendant's medical witness testified that in his opinion the type of arthritis from which plaintiff was suffering was an "infectious type" and "was most certainly improving", and "I found no physical reason for her not being able to continue in her occupation", and that he didn't see plaintiff since the day he examined her.

In his assignment of error defendant claimed that "the trial judge erred in overruling defendant-appellant's several motions for a directed verdict in his favor, in its general charge to the jury, in refusing to sustain defendant-appellant's motion for a judgment in his favor notwithstanding the verdict of the jury", and for a new trial; and contends that the verdict of the jury is against the manifest weight of the evidence and contrary to law, and that there are "other errors appearing upon the face of the record."

The injuries of the parties and the cost of repairing their respective automobiles are recited for the purpose of showing the extent of their respective injuries and damage to their automobiles as bearing upon the speeds of the respective automobiles immediately before and at the time of the collision and the violence thereof, even though no claim is made that the verdict of the jury is excessive.

We dispose of defendant's first assigned ground of error by referring his counsel to the second syllabus of the case of **Halkias, Appellee, v. Wilkoff Co., Appellant, 141 Oh St, 139,** in which the supreme court said:—

"When a motion of a defendant for a directed verdict is made at the conclusion of plaintiff's evidence and overruled, the defendant has an election either to stand on his exception to the ruling or to proceed with his defense; and if he accepts the ruling, however erroneous it may be, and proceeds with his defense, introducing evidence on his own behalf, he thereby waives his right to rely on the denial of his original motion."

The trial judge did not err to defendant's prejudice as alleged in this assigned ground of error.

While counsel for defendant assigned as a ground of error that the trial judge erred in his general charge to the jury, upon oral argument in open court he stated that he was not relying upon this assigned ground of error. Accordingly, we do not discuss the charge of the trial judge to the jury.

The evidence in this case was so conflicting and contradictory as to all the issues raised by the pleadings and evidence that reasonable minds could do nothing other than reach different conclusions with respect thereto thus presenting questions for the determination of the jury as to negligence of the parties and proximate cause of the collision, freeing the trial judge of defendant's charges that he erred to his prejudice in overruling his motions for a verdict directed in his favor made at the conclusion of all the evidence, for a new trial, and for judgment in his favor notwithstanding the verdict of the jury.

The rather voluminous record submitted to us for review has been read carefully, the testimony quoted at length, and full reference made to other evidence, and as a result of such study certainly we cannot arrive at the conclusion counsel for defendant asks us to reach that "the verdict of the jury was against the manifest weight of the evidence" nor "contrary to law".

Defendant's counsel has failed to call our attention to "other errors appearing upon the face of the record" and to comply in respect thereto with the provisions of Rule VII of this court that their briefs "shall contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record, as is necessary to show how the question arose, together with a statement. of the authorities relied upon. Accordingly, we will not pass upon this assigned ground of error.

The judgment of the court of common pleas is affirmed.

CARTER, PJ, NICHOLS, J, concur in judgment.